UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-mj-81 (HB)

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>MICHAEL JOHN HARRIS,  )<br>)<br>Defendant.  ) | **GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING** |

The United States of America, by and through its undersigned attorneys, hereby submits its position with respect to the sentencing of Michael John Harris. On March 2, 2016, the defendant pled guilty to two violations of the Freedom of Access to Clinic Entrances Act ("FACE Act"), 18 U.S.C. § 248(a)(1). Because these convictions are misdemeanors, the statutory maximum term of imprisonment is one year for each count of conviction. The Presentence Investigation Report ("PSR") calculated the defendant's total offense level to be 10 and his Criminal History to be Category III, resulting in a Sentencing Guidelines range of 10 to 16 months. PSR ¶ 77. For the reasons given below, the government respectfully submits that a brief period of incarceration is appropriate in this case.

A.   **FACTUAL BACKGROUND**

On May 12 and 13, 2014, the defendant placed threatening phone calls to the Minneapolis Planned Parenthood Clinic, and the Clinic of Dr. Mildred Hanson—two Minneapolis clinics that offer women's health services, including abortion. Harris made one call to each of these clinics on May 12 in which he threatened to kill clinic employees. Both of these calls were recorded. The next day, May 13, an employee at Dr. Hanson's office received another threatening call from Harris. Both clinics took increased security measures after receiving the

threats, and the calls frightened clinic employees. Additionally, Dr. Hanson's clinic dismissed its employees and closed early following the May 13 call.

On March 2, 2016, Harris pled guilty to two FACE Act violations for the two May 12, 2014, calls. The third call Harris placed to Dr. Hanson's clinic on May 13, 2014, was included in the plea agreement between the parties as conduct relevant to the defendant's convictions.

1. **Counts of Conviction: May 12, 2014, Calls**

At approximately 5:23 p.m. on May 12, 2014, defendant Harris called the Planned Parenthood Clinic in Minneapolis, Minnesota. Because the call was placed after the Clinic was closed, it was routed to a Planned Parenthood Compliance Hotline in Minneapolis. Defendant Harris engaged in a brief phone conversation with the operator, M.K. He began by stating "Hi there. I have a problem actually. My wife is pregnant and I want to kill the baby. So how would that be done?" M.K. asked to speak to his wife, and Harris responded "Um, no but if I could meet you I would cut your fucking head off with a band saw." He then told M.K. that "[i]f I see you in person I would kill you with my bare fucking hands you little cunt," and "I'm just calling to tell you I wish I could kill you." M.K. then ended the call and immediately reported it to her supervisors.

Harris then called the Office of Mildred Hanson at 5:30 p.m. on May 12, 2014. This call also went to an answering service and was recorded. As in the Planned Parenthood call, Harris said he wanted to kill his pregnant wife's baby. He then asked for Mildred Hanson. The operator told him that he had reached an answering service, and that Dr. Hanson was not present. Harris then stated "The main point I was going to make is that I am going to come there and kill every one of you fucking cunts." After the operator tried to impress upon Harris the fact that he was speaking to an answering service, he stated "Okay, well I'll be at the clinic and I'm going to

shoot every one of you fucking cunts down." He ended the call by stating "I think you need to stop killing babies."

### 2. Relevant Conduct: Harris's May 13, 2014, Call

On May 13, 2014, at 2:51 p.m., Harris placed a second call to Dr. Hanson's clinic. This call was not recorded, but the recipient, clinic administrative assistant L.S., took detailed notes about the call immediately after it ended. During the call, Harris identified himself as "Detective Bird" and demanded Mildred Hanson's address, asserting that she had killed someone and needed to be arrested. When L.S. declined to provide Hanson's address, Harris, as "Detective Bird," threatened to arrest everyone at the clinic and "put them in a cage." Harris then stated that he was ten minutes away from the clinic and hung up the phone.

### 3. Clinics' Responses

After Harris's May 12 call to Planned Parenthood, M.K. (the operator who took the call) contacted management, who contacted the Minneapolis police and followed their standard security procedures.[1] Due to a quick law enforcement response, Planned Parenthood did not close the clinic, but, took a number of enhanced safety measures.[2]

At the time of this incident, Dr. Mildred Hanson was 90 years old and no longer treated patients. Instead, the clinic was operated by her 52-year-old daughter, M.H. On May 12, the two women happened to be together when the clinic's after-hours answering service notified them about Harris's first call to the clinic. In response, they immediately contacted the police and undertook enhanced safety measures. Mildred called multiple federal and local law

---

[1] M.K. also filed a separate police report about the call herself, on May 13. M.K. told the FBI that she was frightened by the call because Harris's threat to "cut your fucking head off with a band saw" was personally directed at her. She thought the caller could be anyone standing on the street, and she felt uneasy coming to work the morning after the call.

[2] Due to ongoing safety concerns, the Government will not detail enhanced safety measures, but will provide them to the Court upon request.

enforcement agencies in Minneapolis to report the threats and to request extra security for the clinic. M.H. and Mildred also informed the clinic's staff about the call.

Early on the morning of May 13, M.H. instructed a long-time clinic employee to contact the National Abortion Federation for guidance about the May 12 threat.[3] Also on May 13, before Harris's second call to Dr. Hanson's clinic, some clinic staff had listened to the recording of Harris's May 12 call to the clinic. As a result, when clinic employee L.S. answered Harris's May 13 call and heard his voice, L.S. guessed (correctly) that the same caller had placed both calls. Accordingly, in response, L.S. called the police, closed the office, sent the other employees home, and locked the clinic's front door. L.S. also called the clinic's security service, and another employee called the U.S. Marshals Service. The May 13 call—including Harris's statement that he was ten minutes away from the clinic—scared the clinic's employees. After learning of the call, one of the clinic's medical assistants went to the back of the office and began to pray.

Finally, after these calls, both M.H. and Mildred altered their personal routines to take extra security measures.[4]

### 4. Defendant's Record While on Pre-trial Release

After pleading guilty on March 2, 2016, the defendant was released pending sentencing, subject to several conditions, including, among other things, a requirement that he abstain from alcohol and drugs. Despite this requirement, between March 2016 and July 2016, the defendant repeatedly tested positive for marijuana. PSR ¶ 4. Following three violations filed by the Probation Office, the Court ordered the defendant to serve approximately one month of confinement in a halfway house, and to receive treatment in an outpatient substance abuse

---

[3] The National Abortion Federation advised the clinic to take several specific additional security measures in response to the threat.
[4] In the intervening time since this incident, Dr. Mildred Hanson has passed away.

program. *Id*. The defendant attended the outpatient treatment program from October 5, 2016, through November 23, 2016; even so, he submitted a positive test for alcohol on November 1, 2016. *Id*.

**B.    ARGUMENT**

A district court at sentencing must consider both the applicable Sentencing Guidelines and the sentencing factors identified at 18 U.S.C. § 3553(a). However, a district court retains substantial discretion in devising an appropriate sentence. *See United States v. Miner*, 544 F.3d 930, 932 (8th Cir. 2008) (discussing abuse of discretion standard for sentencing appeals). In this case, after taking into account both the Guidelines and the § 3553(a) factors, the government recommends a brief term of incarceration, but otherwise defers to the discretion of the Court.

1.    **Sentencing Guidelines**

Both the parties and the Probation Office agree that the defendant's final offense level is 10. However, while the parties (as reflected in the plea agreement) had anticipated that the defendant's criminal history would be category I, resulting in a sentencing guidelines range of 6 to 12 months imprisonment, the Probation Office has determined that the defendant is in criminal history category III, resulting in a sentencing guidelines range of 10 to 16 months imprisonment.[5] The Probation Office reached this calculation based on the defendant's two prior domestic violence misdemeanor convictions, as well as the fact that he had not yet completed his probation for one of those offenses at the time of the instant offense. PSR ¶¶ 39-45.

2.    **Relevant § 3553(a) Factors**

Under 18 U.S.C. § 3553(a), relevant sentencing factors include, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, the need

---

[5] Also in the plea agreement, the government agreed to recommend to the Court a sentence at the low end of the defendant's Sentencing Guidelines range. Based on the parties' anticipated Guidelines calculations, the government had expected to ask for a sentence of around 6 months' incarceration.

for the sentence to reflect the seriousness of the offense, the need for deterrence, and the need to protect the public from future crimes of the defendant.

Here, the nature and circumstances of the offense are quite serious, and warrant some jail time. The defendant placed successive calls to two clinics that provide women's health care (including abortion services) and threatened both clinics with graphic violence aimed at killing clinic employees: in his call to Planned Parenthood, the defendant threatened to cut off the call recipient's head with a band saw, or to kill her with his bare hands, and in his call to Dr. Hanson's clinic, he threatened to travel to the clinic and shoot "every one" of the clinic's employees. The defendant's threats scared the individual call-takers. Each of the clinics took the threats very seriously, both by immediately notifying law enforcement and by taking additional security measures to avoid any potential harm to employees and patients. Federal, state, and local law enforcement agencies all expended resources to respond to the threats.

In addition, the defendant's relevant conduct—the second May 13, 2014, call to Dr. Hanson's clinic—gives further weight to the seriousness of this offense. After stating in the May 12 call that he would "be at the clinic and . . . shoot every one of you fucking cunts down," in the May 13 call the defendant stated that he was coming to the clinic to arrest everyone present and put them in a cage, and that he was only ten minutes away. Unsurprisingly, given the defendant's threat to shoot clinic employees less than 24 hours earlier and his statement implying that he would arrive at the clinic in the near future, the clinic immediately went to extreme measures to protect its patients and staff from violence. This third call added to the fear felt by clinic employees from the defendant's prior call, and it wasted even more clinic and law enforcement resources to appropriately respond. Accordingly, the nature and circumstances of this offense and the defendant's relevant conduct are serious, and they weigh in favor of some jail time.

The history and characteristics of this defendant also support a sentence that includes some jail time.  The defendant committed this offense while he was still on probation for a domestic violence offense against his wife, demonstrating a lack of respect for the terms of court-ordered probation.  Moreover, the defendant has been on pre-sentencing release before this Court for an extended period, and he failed to comply with two of the key terms of his release (abstention from drugs and alcohol) for a large part of that time.  *See* PSR ¶ 4 (noting defendant tested positive for alcohol use on November 1, 2016 despite being in a court-ordered substance abuse treatment program from October 5, 2016 through November 23, 2016).  Thus, this factor also weighs toward a sentence that is more serious than mere probation.

Finally, a criminal sentence should take into account specific deterrence of the particular defendant.  This defendant demonstrated difficulty complying with court-ordered conditions concerning abstaining from drugs and alcohol.  In addition to specifically deterring this defendant from future crimes, a period of some jail time that can include inpatient drug and alcohol treatment will likely help the defendant comply with any conditions of release the Court may impose upon him during any supervised release period.

In sum, the government respectfully submits that the § 3553(a) sentencing factors weigh in favor of a period of incarceration for this defendant.  With regard to the exact amount of jail time that is appropriate in this case, the government defers to the broad discretion of the Court.

C.  CONCLUSION

For the reasons given above, it is the position of the United States that a sentence that includes a brief term of incarceration is appropriate in this case, based on the applicable Sentencing Guidelines and the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

Date:  January 27, 2017                          Respectfully submitted,

                                                ANDREW M. LUGER
                                                United States Attorney

                                                MANDA M. SERTICH
                                                ASSISTANT U.S. ATTORNEY
                                                Attorney ID No. 4289093


                                                */s/  Risa Berkower*
                                                BY:  RISA BERKOWER
                                                TRIAL ATTORNEY
                                                U.S. Department of Justice
                                                Civil Rights Division
                                                950 Pennsylvania Ave. NW
                                                Washington, DC 20532
                                                Phone:  (202) 305-0150
                                                Email:  risa.berkower@usdoj.gov